909 So.2d 1081 (2005)
GEORGIA-PACIFIC CORPORATION, INC.; Herbert Jones; and C. Gary Crumpton, Administrator of the Estate of Thomas A. Jones, Deceased
v.
Dolly Dimple Jones MOONEY; Wiley Dorman Jones; and Diane Jones Moore.
No. 2002-IA-01990-SCT.
Supreme Court of Mississippi.
February 3, 2005.
*1082 W. Wayne Drinkwater, Jr., Margaret Oertling Cupples, James H. Heidelberg, Pascagoula, R.K. Houston, attorneys for appellants.
Gerald Marion Martin, Raleigh, E. Howard Eaton, Taylorsville, William H. Jones, Jackson, Jolly W. Matthews, Hattiesburg, attorneys for appellees.
EN BANC.
EASLEY, Justice, for the Court.
¶ 1. This interlocutory appeal involves the alleged disposal of waste material on land located in Smith County, Mississippi. The main issues before this Court concern whether the circuit court correctly transferred the matter to chancery court or whether the circuit court should have dismissed the case without prejudice to allow the parties to exhaust administrative remedies.
¶ 2. The Plaintiffs alleged multiple causes of action against Georgia-Pacific Corporation (Georgia-Pacific) and Georgia-Pacific Resins, Inc. (Resins) known as the Georgia-Pacific Actions and the Resin Actions, respectively. Georgia-Pacific sought permission to bring an interlocutory appeal challenging the circuit court's transfer of the Georgia-Pacific Actions and the chancery court's jurisdiction. On May 29, 2003, this Court consolidated all six cases, the three Georgia-Pacific Actions and the three Resin Actions for the interlocutory appeal as there was no practical way to sever the cases because of the consolidation in the trial court. This Court finds that the Smith County Circuit Court erroneously transferred the Georgia-Pacific Actions to the Smith County Chancery Court. In accordance with this Court's ruling the Georgia-Pacific Actions are to be remanded to the Smith County Chancery Court with instructions to promptly retransfer these cases to the Smith County Circuit Court. The Resin Actions were originally filed in the chancery court and have never been removed from its jurisdiction Therefore, the Resin Actions shall remain in the Smith County Chancery Court.
¶ 3. The Smith County Circuit Court transferred the Georgia-Pacific Actions to chancery court and refrained from ruling on Georgia-Pacific's motion to dismiss for failure to exhaust administrative remedies allowing the chancery court to rule upon the motion. Upon retransfer of the Georgia-Pacific Actions to the Smith County Circuit Court, the circuit court judge will have to make a ruling on Georgia-Pacific's motion to dismiss. However, this Court's ruling in Chevron U.S.A., Inc. v. Smith, 844 So.2d 1145 (Miss.2002), requires that to the extent that the causes of action in the Georgia-Pacific Actions relate to the need for closure of the site or relate to the authority of the Mississippi Department of Environmental Quality (MDEQ), the Plaintiffs must exhaust their administrative remedies prior to seeking relief from the Mississippi courts.
¶ 4. Accordingly, we remand these actions to the Smith County Chancery Court which shall promptly retransfer the Georgia Pacific Actions to the Smith County Circuit Court and retain the Resin Actions. The Smith County Circuit Court never ruled on Georgia-Pacific's motion to dismiss *1083 to exhaust administrative remedies. Instead, the circuit court refrained from ruling on that issue and transferred the case, thus, the chancery court had to make a ruling to deny the motion to dismiss for failure to exhaust administrative remedies. Therefore, the Smith County Circuit Court shall conduct further proceedings in accordance with this opinion, this Court's ruling pursuant to the exhaustion of administrative remedies in Chevron and the guidelines as set forth below in the application of Chevron and Donald v. Amoco Production Co., 735 So.2d 161 (Miss.1999).

PROCEDURAL HISTORY
¶ 5. Dolly Dimple Jones Mooney (Dolly), Wiley Dorman Jones (Dorman), and Diane Jones Moore (Diane) (hereinafter collectively known as the Plaintiffs) sued their brother, Herbert Jones (Herbert), Wayne Stringer, an employee, and Georgia-Pacific in the Circuit Court of Smith County, Mississippi.[1] Diane also sued other employees and her father Thomas A. Jones (Thomas). After Thomas's death, the administrator of his estate was included in the actions as C. Gary Crumpton, Administrator of the Estate of Thomas A. Jones, deceased (the Estate).[2] Thomas A. Jones was the father of the Plaintiffs and Herbert. The Plaintiffs all own land in Smith County on which is waste material allegedly deposited by Georgia-Pacific.
¶ 6. As way of background, the Plaintiffs individually filed complaints in the Circuit Court of Smith County against Herbert, various employees and Georgia-Pacific in 1997 and in 1998 Diane Moore also included her father which is now the Estate. The Plaintiffs alleged negligence, gross negligence, strict liability, continuing toxic trespass, private nuisance, public nuisance, fraud and waste and each sought $20 million in compensatory damages and $20 million in punitive damages.[3] These three actions against Georgia-Pacific were consolidated by the circuit court and are herein referenced as the Georgia-Pacific Actions.
¶ 7. In April 2002, the Plaintiffs filed similar complaints against Georgia-Pacific Resins, Inc. (Resins), which is a subsidiary of Georgia-Pacific, various former Resins employees and yet unidentified plaintiffs A, B, C, D, E, and F in the Chancery Court of Smith County. These three separate actions were consolidated by the chancery court and are herein referenced as the Resins Actions. In the Resins Actions, the Plaintiffs alleged negligence, gross negligence, strict liability, trespass, continuing trespass, private nuisance, public nuisance and continuing nuisance. The Plaintiffs requested the abatement of the nuisance and $44,000 in compensatory damages and $30,000 in punitive damages.
¶ 8. In March 2001, Georgia-Pacific filed a motion for summary judgment based upon the statutes of limitation and prior trespass doctrine.[4] The trial judge denied the summary judgment motion and granted leave to renew the motions at a later time in May 2001.
*1084 ¶ 9. In October 2002, this Court decided Chevron U.S.A, Inc. v. Smith, 844 So.2d 1145 (Miss.2002). In Chevron, a suit was filed to recover damages for naturally occurring radioactive material (NORM) contamination on the Smith's property. Id. at 1147. This Court reversed the judgment entered in accordance a jury verdict in the amount of $2,349,275 because the Smiths failed to exhaust administrative remedies prior to seeking relief from the trial court. Id. at 1146.
¶ 10. On October 21, 2002, Georgia-Pacific informed the trial court of the Chevron ruling. Accordingly, the Plaintiffs filed a motion to transfer the Georgia-Pacific Actions to the Chancery Court of Smith County. Georgia-Pacific in turn filed a motion to dismiss for failure to exhaust administrative remedies. On November 21, 2002, the Smith County Circuit Court transferred the Georgia-Pacific Actions to the Smith County Chancery Court, refrained from ruling on Georgia-Pacific's motion to dismiss to allow the parties to argue the motion in the chancery court and denied certification for interlocutory appeal pursuant to M.R.A.P. 5. The order stated in part:
4. That in the interest of equity, efficiency and economy of justice, the Court finds that the above styled causes of action should be transferred to the Chancery Court of Smith County, Mississippi.
5. This Court will refrain from ruling upon Georgia-Pacific's motion to dismiss and allow the parties further to argue the motion before the Chancery Court of Smith County, Mississippi.
6. Pursuant to Rule 5 of the Mississippi Rules of Appellate Procedure, the Court has been requested by Georgia-Pacific to certify that a substantial basis exists for a difference of opinion on the question of whether the Chancery Court of Smith County properly had jurisdiction of these actions; and that appellate resolution of this issue may materially advance the termination of the litigation and avoid exceptional expense to the parties, and may protect Georgia-Pacific from substantial and irreparable injury. After consideration, the Court declines to make the requested certification, and accordingly denies Georgia-Pacific's request for interlocutory appeal of this order.
¶ 11. On December 4, 2002, Georgia-Pacific filed a petition for interlocutory appeal with this Court challenging the circuit court's transfer of the Georgia-Pacific Actions to chancery court and challenging the circuit court's refusal to rule on their motion to dismiss. In January 2003, the chancellor allowed the Plaintiffs to amend their complaints against Georgia-Pacific to include an equity claim for abatement of the nuisance in the Georgia-Pacific Actions. Thereafter, Georgia-Pacific filed a motion to stay the cases pending the decision on the interlocutory appeal. On January 21, 2003, the chancery court denied Georgia-Pacific's motion to stay, denied the motion to dismiss for failure to exhaust administrative remedies, consolidated the Georgia-Pacific Actions and the Resin Actions and set the six cases for trial on March 18, 2003. The chancery order of January 28, 2003, stated in part:
The Court has before it the Defendant Georgia-Pacific Corporations's Motion to Dismiss for Plaintiff's Failure to Exhaust Administrative Remedies; and the Motion to Stay Proceedings and For Other Relief. Upon consideration, and having heard arguments of the counsel, the Court finds that both motions should be denied, for the reasons states in the *1085 Court's bench ruling of January 21, 2003. That bench ruling is attached hereto as Exhibit "A" and made a part hereto as if fully copied.
¶ 12. A three-justice panel of this Court,[5] on January 30, 2003, denied Georgia-Pacific's petition for interlocutory appeal. On January 31, 2003, the chancellor consolidated the Georgia-Pacific Actions and the Resin Actions. Georgia-Pacific then filed a petition for interlocutory appeal on February 5, 2003, requesting en banc consideration and a petition for writ of prohibition or mandamus staying trial court proceedings for the March 18, 2003, trial set by the chancellor. On March 13, 2003, this Court granted an emergency motion to stay which was later clarified on March 21 to include all proceedings concerning the Georgia-Pacific Actions and the Resin Actions. Then, on May 29, 2003, this Court granted Georgia-Pacific's petition for interlocutory appeal finding that the Georgia-Pacific Actions and the Resin Actions should be consolidated for the interlocutory appeal and stated in part:
After due consideration, the Court finds that the petition for interlocutory appeal should be granted as it pertains to all six cases. Although the chancellor's order consolidating the cases indicates "for trial purposes," the Court finds that there is no practical way to sever the cases because of the consolidation and all six should be addressed in the interlocutory appeal.
(emphasis added). It is from this ruling and the consolidation of all six cases, three Georgia-Pacific Actions and three Resins Actions, that Georgia-Pacific raises its issues on interlocutory appeal.

FACTS
¶ 13. Thomas and his wife owned approximately 132 acres of land in Smith County, Mississippi. In 1972 Georgia-Pacific entered into an agreement with Thomas and Herbert allowing disposal of wood waste on land owned by Herbert and his parents. Disposal of the waste continued on the property until the early 1990's. In 1986, Thomas divided the property into four 33 acre parcels and conveyed a remainder interest in each parcel to each of his four children, retaining a life estate in the parcels for himself. The Plaintiffs eventually each owned approximately 33 acres of the 132 tract of land which was either bought from Jones or a gift. Approximately 40-60 acres of land have waste deposits, and each of the Plaintiffs' individual property has some of this waste deposited on it. In 1996, Dolly and Dorman purchased Thomas's life estate for their portions of the property from their father in the amount of $5,000 each. Diane received her portion of the acreage by fee simple title upon the death of her father in March, 2002. Dolly and Dorman filed their lawsuits in Smith County Circuit Court in 1997. Diane filed her lawsuit in 1998.
¶ 14. On April 12, 2002, the Plaintiffs filed similar, individual lawsuits in the Chancery Court of Smith County against Resins. In October, 2002, shortly before the Georgia-Pacific Actions were to go to trial, this Court handed down Chevron.
¶ 15. While all of these actions occurred in the Mississippi courts, the parties also had a federal action concerning these claims. The federal court has stayed its proceedings at this time.
¶ 16. The following issues were raised for appellate review by this Court:

ISSUES
I. Whether the Circuit Court of Smith County erred in transferring *1086 this action to the Chancery Court of Smith County.
II. Whether the Chancery Court has subject matter jurisdiction of this action for monetary damages which, at the time of transfer, included no request for equitable relief.
III. Whether Georgia-Pacific Corporation has a constitutional right to a trial by jury in an action for money damages, which right will be lost if the action is tried by the Chancery Court.
IV. Whether the Circuit Court erred in transferring this action to Chancery Court rather than dismissing it without prejudice so that Plaintiffs could pursue their administrative remedies before the Mississippi Department of Environmental Quality (MDEQ), pursuant to Chevron USA, Inc. v. Smith, 844 So.2d 1145 (Miss.2002).

LEGAL ANALYSIS

I. Transfer from circuit court to chancery court.
¶ 17. The Circuit Court of Smith County transferred the Georgia-Pacific Actions to the Smith County Chancery Court. Once in the chancery court, the Georgia-Pacific Actions and the Resin Action were consolidated for trial purposes by the chancery court. Later, this Court granted Georgia-Pacific's request for en banc consideration on its petition for interlocutory appeal. This Court granted the interlocutory appeal and consolidated all six cases, the three Georgia-Pacific Actions and the three Resin Actions for the interlocutory appeal as there was no practical way to sever the cases because of the consolidation.
¶ 18. Georgia-Pacific argues that the chancery court does not have jurisdiction to hear the cases. From the beginning, Georgia-Pacific claims that this case has been based on monetary damages and that injunctive relief was requested only after the trial court transferred the Georgia-Pacific Actions to chancery court. As for the Resin Actions, Georgia-Pacific argues that the Plaintiffs seek compensatory and punitive damages based on common law theories. Further, Georgia-Pacific argues that the transfer of the Georgia-Pacific Actions to the chancery court would not promote a just, speedy and inexpensive determination of the issues.
¶ 19. The Plaintiffs argue that the trial judge's ruling that the cost of restoration would be limited to the value of the property and is consistent with Chevron. However, the Plaintiffs claim that there is another element of damages, that being the cost of closure of the site. The MDEQ considered a property owner a responsible party for closure. Faced with the issue of closure in the case sub judice, the Plaintiffs contend that Chevron interjected an element of equity and that in the interest of efficiency and economy the Georgia-Pacific Actions should be transferred to chancery court.
¶ 20. Jurisdiction is a question of law, and this Court reviews questions of law de novo. Burnette v. Hartford Underwriters Ins. Co., 770 So.2d 948, 951 (Miss. 2000). See also Rogers v. Eaves, 812 So.2d 208, 211 (Miss.2002). The Mississippi Constitution of 1890 Art. 6, § 159 sets the jurisdictional parameters of the chancery court and states:
The chancery court shall have full jurisdiction in the following matters and cases, viz.:
(a) All matters in equity;
(b) Divorce and alimony;

*1087 (c) Matters testamentary and of administration;
(d) Minor's business;
(e) Cases of idiocy, lunacy, and persons of unsound mind;
(f) All cases of which the said court had jurisdiction under the laws in force when this Constitution is put in operation.
(emphasis added). Miss.Code Ann. § 9-5-81 (Rev.2002) also provides jurisdiction to the chancery court and states:
The chancery court in addition to the full jurisdiction in all the matters and cases expressly conferred upon it by the constitution shall have jurisdiction of all cases transferred to it by the circuit court or remanded to it by the supreme court; and such further jurisdiction, as is, in this chapter or elsewhere, provided by law.
In contrast, the Mississippi Constitution of 1890, Article 6, § 156 provides that "[t]he circuit court shall have original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court, and such appellate jurisdiction as shall be prescribed by law." Miss. Const. of 1890 art. 6, § 156. Therefore, while chancery courts have jurisdiction of all matters in equity, circuit courts are courts of general jurisdiction. Lawrence County Sch. Dist. v. Brister, 823 So.2d 459, 460 (Miss.2001). This Court has addressed the issue of when there is a conflict over whether an action is legal or equitable in nature. In Burnette, this Court stated:
We have indicated that, if some doubt exists as to whether a complaint is legal or equitable in nature, that case is better tried in circuit court. Southern Leisure, 742 So.2d at 1090. In McDonald's Corp. v. Robinson Indus., Inc., 592 So.2d 927, 934 (Miss.1991), we stated that "[i]t is more appropriate for a circuit court to hear equity claims than it is for a chancery court to hear actions at law since circuit courts have general jurisdiction but chancery courts enjoy only limited jurisdiction."
Burnette, 770 So.2d at 952. This Court has held that the trial courts are "to look to the substance of the claim rather than the form of the case." Trustmark Nat'l Bank v. Johnson, 865 So.2d 1148, 1151 (Miss.2004). See also Brister, 823 So.2d at 460 (citing McLean v. Green, 352 So.2d 1312, 1314 (Miss.1977))("Negligence actions should be brought in circuit court. When a plaintiff's complaint neither requests nor requires equitable relief, a chancery court should not exercise jurisdiction"); Southern Leisure Homes, Inc. v. Hardin, 742 So.2d 1088 (Miss. 1999)("breach of contract claim is best heard in circuit court and that the remedy of punitive damages is clearly legal rather than equitable in nature").
¶ 21. Indeed, M.R.C.P. 1 provides that the aim of the Mississippi Rules of Civil Procedure is to "govern procedure in the circuit courts, chancery courts, and county courts in all suits of a civil nature, whether cognizable as cases at law or in equity . . ." and that "[t]hese rules shall be construed to secure the just, speedy, and inexpensive determination of every action."
¶ 22. Here, the Plaintiffs filed the Georgia-Pacific Actions in the Circuit Court of Smith County in 1997 and 1998. After nearly five years of litigation and the Chevron ruling by this Court, the Plaintiffs requested that the actions be transferred to the Chancery Court of Smith County. The substance of the claims in the complaint was legal, not equitable. Only after this Court decided Chevron and the trial court transferred the Georgia-Pacific Actions to chancery court did the Plaintiffs add an equitable claim for abatement.
*1088 ¶ 23. The circuit court ordered the transfer to chancery court citing the transfer as being "in the interest of equity, efficiency and economy of justice." However, this Court finds that the Georgia-Pacific Actions were in the circuit court for about five years before the transfer to chancery court. The circuit court therefore, is quite familiar with all the issues of the case, most of which are legal in nature. When this Court granted Georgia-Pacific's request for en banc consideration for the petition for interlocutory appeal, we consolidated all six cases, those being the three Georgia-Pacific Actions, originally filed in circuit court, and the three Resin Actions, originally filed in chancery court. Accordingly, the three Georgia-Pacific Actions are remanded to the Smith County Chancery Court and shall be promptly retransferred to the Smith County Circuit Court. The three Resin Actions shall remain in the Smith County Chancery Court.

II. Administrative Remedies.
¶ 24. The Smith County Circuit Court refrained from ruling on Georgia-Pacific's motion to dismiss for a failure to exhaust administrative remedies. Instead, the circuit court transferred the Georgia-Pacific Actions to the Smith County Chancery Court and allowed the chancery court to make a decision on the motion to dismiss for failure to exhaust administrative remedies. Once in chancery court, the motion to dismiss was denied by the chancellor. Even though the circuit court never made a ruling on the issue of whether the Plaintiffs exhausted their administrative remedies prior to filing suit against Georgia-Pacific, this Court will, nevertheless, address this issue as guidance to the circuit court on this issue.
¶ 25. Georgia-Pacific claims that pursuant to Chevron, both the Georgia-Pacific Actions and the Resins Actions must be dismissed because the Plaintiffs failed to exhaust their administrative remedies with MDEQ. Chevron, 844 So.2d 1145. Like the Oil and Gas Board in Chevron, Georgia-Pacific cites to the Legislature's delegation of authority to a state agency, namely MDEQ, to regulate and manage the disposal of waste. In its argument, Georgia-Pacific claims that MDEQ's authority and procedures for waste issues are as extensive as those granted to the Oil and Gas Board for oil and gas issues. While Georgia-Pacific denies responsibility for remediation on the Plaintiffs' property, the company contends that MDEQ is aware of the material on the Plaintiffs' property, has the authority to pursue administrative remedies such as requiring closure and/or remediation of the property, and intends to take action. Georgia-Pacific cites to correspondence from MDEQ in 1997 and 2002 that allegedly indicates that MDEQ will seek administrative remedies relating to closure and/or remediation of the property. Further, Georgia-Pacific claims that their case is indistinguishable from Chevron.
¶ 26. The Plaintiffs argue that there is no adequate administrative remedy to exhaust their claims and cite to Campbell Sixty-Six Express, Inc. v. J. & G. Express, Inc., 244 Miss. 427, 141 So.2d 720 (1962). Closure, the Plaintiffs claim, is just one element of their damage claim. The MDEQ had also indicated that it considers the landowners which are the Plaintiffs, to be responsible parties for the closure of the site. Further, the Plaintiffs argue that Chevron is distinguishable from their case. Unlike the Oil and Gas Board, which provides for restoration of the property by the oil and gas producers, the MDEQ has the authority over matters concerning the landfill and can hold the landowner or a polluter responsible for closure to the landfill. Georgia-Pacific has denied responsibility for closure of the *1089 landfill and MDEQ has advised the Plaintiffs that they are jointly responsible for clean-up and closure costs of the property. Therefore, the Plaintiffs maintain that MDEQ does not provide an adequate remedy and that their case is more analogous to Campbell rather than Chevron.
¶ 27. Without waiving the argument that MDEQ does not provide an adequate remedy, the Plaintiffs also argue, in the alternative, that their case allegedly falls within an exception to the doctrine of exhaustion of administrative remedies. That exception to the requirement to first exhaust administrative remedies provides relief for a party when there is a delay of action or failure to act on the part of an administrative agency. In this case, the Plaintiffs contend that the MDEQ knew of the waste material, corresponded with the parties in 1997 through 2002, informed the Plaintiffs that they and Georgia-Pacific were responsible parties in 2002, Georgia-Pacific argued that the Plaintiffs should have primary responsibility for the closure and the MDEQ had not administratively ordered closure or remediation of the site. After seven years of knowledge, the MDEQ has not held a formal hearing or had an administrative order to require closure. Therefore, the Plaintiffs claim that there is not an adequate administrative remedy in this action similar to that in Public Employees Retirement System v. Hawkins, 781 So.2d 899, 907 (Miss.2001).
¶ 28. Chevron relied upon Donald v. Amoco Production Co., 735 So.2d 161 (Miss.1999). In Donald, a property owner sued a bank for negligent misrepresentations only and several oil companies for negligence, nuisance, trespass to land, breach of contract, waste, strict liability and outrageous conduct. Id. at 164. The property owner, Donald, alleged that the former owners transported oil field waste to the property. Id. The circuit court granted the defendants motion to dismiss and Donald appealed to this Court. Id. As to all the claims against the oil companies, this Court reversed the circuit court's dismissal pursuant to M.R.C.P. 12(b)(6) with the sole exception of negligence per se. 735 So.2d at 182-83.
¶ 29. Donald claimed that there was negligence per se because the property damage resulted from violations of oil and gas regulations. Id. at 176. This Court held that the negligence per se claim was properly dismissed by the trial court, however the trial court dismissed the claim for the wrong reason. Id. at 177. Further, this Court held that Donald did not exhaust his administrative remedies as to this claim. Id. The Court based its decision on the fact that the Oil and Gas Board could have penalized the former property owners and the oil companies and required them to pay the cost of clean-up and restoration of the property. Id.
¶ 30. In Chevron, this Court reversed and rendered a judgment entered on a $2,349,275 jury verdict, stating that the trial court erred in allowing a jury trial because the Smiths failed to exhaust their administrative remedies from the Oil and Gas Board prior to seeking relief from the trial court. Chevron, 844 So.2d at 1146. The Court dismissed the Smiths' complaint and the action without prejudice. Id.
¶ 31. The Smiths purchased surface rights to 55 acres of land in Brookhaven. Id. at 1147. At the time of the purchase, the Smiths knew of the oil and gas operations and the saltwater facility located on the land. Id. Chevron contended that the facility was in use at the time it sold its mineral interest in the field in 1990, while the Smiths contend that the facility was abandoned around the time that they purchased the land. Id. In 1994, neighbors informed the Smiths of possible NORM *1090 contamination on the land and the Smiths filed suit in 1996. Id.
¶ 32. This Court held that "[w]here an administrative agency regulates certain activity, an aggrieved party must first seek relief from the administrative agency before seeking relief from the trial courts." Chevron, 844 So.2d at 1148 (citations omitted). Chevron relied upon Donald, which states in part that "in cases where private plaintiffs are seeking clean up of oil production byproducts, the Oil and Gas Board `remedy is adequate and should ... [be] exhausted prior to filing a private suit.'" Id. (citing Donald, 735 So.2d at 177). "This Court cannot ignore Donald and fail to force the Smiths to seek relief from the Oil and Gas Board before filing suit in the trial court." Id.
¶ 33. The Mississippi Legislature has delegated authority to MDEQ in regard to solid waste management. See Miss.Code Ann. § 17-17-1 et seq. MDEQ also has the authority to enforce compliance with the environmental laws and regulations of the State of Mississippi and may impose civil penalties, injunctive relief, remediation or clean-up. Miss.Code Ann. § 17-17-29.
¶ 34. The Plaintiffs claim that this case is more like Campbell. However, we do not agree. In Campbell, this Court found that the issue was purely legal and that the Commission could not enforce is own order. Campbell, 244 Miss. at 439-40, 141 So.2d at 726. Here, MDEQ has authority over solid waste disposal, it can take enforcement actions against parties, and in this case, has yet to determine the extent of action required for this site. Likewise in Hawkins, this Court found that the issue was a question of law and therefore did not" require resolution of factual disputes or the exercise of agency expertise." Hawkins, 781 So.2d at 907. The issue revolved around a statutory definition which did not require the expertise of the agency. Id.
¶ 35. There is a distinction between Chevron and Donald in that Chevron is based upon an administrative ruling for contamination only whereas Donald and the case sub judice were initially based upon multiple claims in the complaints. Donald only provides administrative relief for the negligence per se claim because it was based upon alleged violations of oil and gas regulations. Donald, 735 So.2d at 176-77.
¶ 36. This Court reversed the trial court's ruling in Donald which granted dismissal of the suit pursuant to M.R.C.P. 12(b)(6) and sent the other claims back to the trial court for further proceedings. In Donald the causes of action included negligence, nuisance, trespass to land, breach of contract, waste, strict liability and outrageous conduct. All claims against the oil companies, with the exception of only the negligence per se claim, were found to have been erroneously dismissed by the trial court. Like Donald, here the Plaintiffs' claims were for multiple claims such as negligence, gross negligence, strict liability, continuing toxic trespass, private nuisance, public nuisance and waste. The Plaintiffs' claims are not solely based upon the clean-up of any contamination.
¶ 37. Without commenting on the merits of any claim, there are other separate and distinct causes of action apart from the issues of clean-up, restoration, closure or remediation of the Plaintiffs' property, similar to Donald. To the extent that the causes of action do not specifically relate to an administrative remedy provided by the statutes and regulations of MDEQ, the remaining causes of action should not be dismissed without prejudice as Georgia-Pacific requests in its argument. The trial court has not made an individual determination of the causes of action based upon *1091 potential clean-up, remediation or closure and any non-closure, clean-up or remediation causes of action. Therefore, this Court finds that the trial court is in the best position to determine what causes of action relate to potential clean-up, remediation or closure activities pursuant to the laws and regulations of MDEQ. Accordingly, upon remand the Smith County Circuit Court shall make a determination as to these causes of action.
¶ 38. As to the argument that MDEQ has not taken action in this case, we find that the Plaintiffs have not shown that they requested a hearing before MDEQ to order closure on the site. Indeed, the correspondence from MDEQ never decisively stated that the site was an illegal dump. The MDEQ did view the site on November 27, 1990. On July 15, 1991, a MDEQ letter indicated that the site did not need a permit at that time. In 1999, the MDEQ indicated that the site needed closure and requested, among other things, proposed closure plans and a closure schedule. In 2002, the MDEQ sent correspondence indicating that it had waited for resolution of the litigation, however, there was no resolution and therefore it would consider seeking administrative actions to require closure of the site. While it is true that Georgia-Pacific urged the MDEQ to wait for the final result of the ongoing litigation, there is no indication that the Plaintiffs requested any hearing by the MDEQ.

III. Jury Trial.
¶ 39. The issue of whether Georgia-Pacific's right to a jury trial was violated by transferring the case from circuit court to chancery court is moot. We find that the action should be returned to circuit court and therefore this is no longer an issue on appeal.

CONCLUSION
¶ 40. For the above reasons, the circuit court erred by transferring the Georgia-Pacific Actions to chancery court. Therefore, we reverse the Smith County Circuit Court's order transferring the Georgia-Pacific Actions to the Smith County Chancery Court, and we remand this case to the Smith County Chancery Court with directions that it promptly sever and transfer the Georgia-Pacific Actions to the Smith County Circuit Court which shall conduct further proceedings in accordance with this opinion, including ruling on Georgia-Pacific's motion to dismiss. The Resin Actions shall remain in the Smith County Chancery Court.
¶ 41. Further, we emphasize that Chevron is controlling on the issue of whether a party has exhausted all its administrative remedies prior to filing an action in a Mississippi court. To the extent that causes of action relate to the need for closure of a site or relate to the authority of MDEQ, a party must exhaust its administrative remedies prior to seeking relief from the courts.
¶ 42. The Clerk of the Supreme Court is hereby directed to forward a copy of this opinion and the mandate, when it is issued, to the Smith County Chancery Court.
¶ 43. REVERSED AND REMANDED.
SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.
NOTES
[1] Georgia-Pacific and Georgia-Pacific Resins have filed a joint brief. Resins's involvement in the case will be addressed later in this opinion.
[2] Herbert Jones and C. Gary Crumpton, Administrator of the Estate of Thomas A. Jones, deceased, have joined the brief and reply brief of Georgia-Pacific Corporation and Georgia-Pacific Resins, Inc.
[3] The circuit court dismissed the fraud counts on June 14, 2001.
[4] Herbert and Thomas filed separate motions and adopted and joined Georgia-Pacific's memorandum in support of the motion for summary judgment.
[5] Then-Presiding Justice McRae and Justices Cobb and Graves.