LEE, J.,
for the Court:
¶ 1. Scribner Equipment Co., Inc. had a one hundred foot section of property taken by the Mississippi Department of Transportation (MDOT) to expand Highway 46. The special court of eminent domain entered an order to compensate Scribner in the sum of $24,300 for the taking of the land. Due to gravel deposits within the one hundred foot section, Scribner argues that the total sum of $24,300 is not just *226 and fair compensation and has filed this timely appeal. Scribner presents the following issues on appeal (1) whether it was error for the trial court to prohibit Scribner from introducing into evidence the gravel value as part of the before and after value of the area taken, and (2) whether it was error for the trial court to refuse to allow Scribner to implead and file a cross-claim against the Mississippi Department of Environmental Quality (MDEQ). Finding the aforementioned issues to be without merit, this Court affirms the decisions of the trial court.
FACTS
¶ 2. The case at bar focuses on two, one hundred foot sections of property owned by Scribner which contained gravel deposits. One section will be referred to as the old one hundred foot section which is the subject of this appeal, and was actually located under the area taken by the MDOT to expand Highway 45. The other will be referred to as the new one hundred foot section, which is a one hundred foot section abutting Highway 45. The argument on appeal centers around the fact that prior to the aforementioned condemnation, there were restrictions on Scribner’s ability to mine the gravel deposits in the old one hundred foot section.
¶ 3. In 1978, legislation was passed to control the surface mining and reclamation of land in Mississippi. The legislature invested MDEQ, among other commissions, with an advisory role in the administration of these laws, rules, and regulations. In the interest of reduction of significant damage to the subject property and public safety, a portion of these laws and regulations forbids surface mining within one hundred feet of the outside right-of-way line of a public road. These laws and regulations in turn excluded Scribner’s right to mine the gravel deposits in the old one hundred foot section right-of-way because the land abutted Highway 45. However, the laws and regulations allowed for an appeal process if one wished to attempt to acquire the right to mine in the affected area. Prior to the eminent domain proceedings, Scribner had not initiated the appeal process to obtain permission to mine the gravel deposits located in the old one hundred foot section.
¶ 4. In 1992, the MDOT filed a petition with the Special Court of Eminent Domain in Monroe County initiating the acquisition of a one hundred foot section of Scribner’s property to widen Highway 45; however, the MDOT and Scribner .could not reach an agreement on the total sum due as compensation for the property. Originally, Scribner disputed the loss of the gravel deposits in the new one hundred foot exclusion ¿rea and whether it should be MDOT or MDEQ who would be required to compensate Scribner for its loss of gravel. As a result, MDOT requested the court allow them to join MDEQ as a party to this action; however, before MDOT formally joined MDEQ as a party, Scribner initiated an appeal process relative to the new one hundred foot exclusion abutting Highway 45. MDEQ removed the unsuitable for mining restriction on this section. After the restriction on mining was granted, Scribner asserted that there were valuable gravel deposits in the old one hundred foot exclusion located under the taking area, and for just and fair compensation to be received for the property, the value of the gravel deposits under this section would have to be considered. Scribner requested that the court allow it to file a cross-claim against MDEQ for a determination of the value of the gravel deposits and whether the source of compensation would be MDOT or MDEQ. The court denied Scribner’s motion to file a cross-claim against MDEQ.
¶ 5. Several statements of values were furnished by Scribner, but the final supplement sought the total sum of $215,127.34 as compensation for the condemnation. Of this sum, Scribner had allotted the value of $202,977.34 for the gravel deposits in the old one hundred foot right-of-way under the taking area. Ultimately, the court re *227 jected the statement of values submitted by Scribner and granted MDOT’s motion in limine to exclude evidence of gravel in the old one hundred foot section under the take area. In turn, the court entered a judgment which awarded Scribner compensation for the condemnation in the total sum of $24,300. The court explained that the evidence of gravel would be excluded for the following reasons:
[Scribner] lost the right to mine the gravel, if any, on April 15, 1978 by the action of the Mississippi Legislature in enacting the ‘Mississippi Surface Mining and Reclamation Law,’ the DEFENDANT [Scribner] had done nothing since that date to attempt to recover the right to mine in the take area prior to the PLAINTIFF [MDOT] acquiring the land under the take area, and the take area is within the old one hundred foot exclusion zone that was established on April 15,1978.
Despite the judgment entered by the court, Scribner contends that the ruling and compensation granted were in error and appealed.
DISCUSSION
I. WHETHER IT WAS ERROR TO PROHIBIT SCRIBNER FROM INTRODUCING INTO EVIDENCE THE GRAVEL VALUE AS PART OF THE BEFORE AND AFTER VALUE OF THE AREA TAKEN.
¶ 6. Scribner asserts the special court of eminent domain erred when it prohibited Scribner from introducing the value of the gravel deposits under the take area in configuring a market value under the before and after rule. Scribner argues that the value of gravel, sand and/or other mineral deposits which have been affected due to eminent domain condemnation have been allowed in prior cases as part of the market value under the before and after rule and should be allowed in the case at bar. Scribner supports this argument by citing such cases as Mississippi State Highway Comm’n v. Wear, 252 Miss. 516, 175 So.2d 508 (1965), and Foster v. Mississippi State Highway Comm’n, 244 Miss. 57, 140 So.2d 267 (1962).
¶ 7. Scribner cites Foster, 244 Miss. 57, 140 So.2d 267 (1962), mainly for its discussion of how minerals such as gravel are calculated to reach a market value for compensation under the before and after rule. However, before this Court has to reach the proper method of factoring in minerals such as gravel under the before and after rule we must decide if the gravel in the case at bar is subject to consideration. Additionally, Scribner relied on cases such as Mississippi State Highway Comm’n v. Wear, 252 Miss. 516, 175 So.2d 508 (1965), to further support its argument that minerals can be considered when valuing land. While this Court concedes that prior case law has given the right to consider mineral deposits in the overall market value of the property involved in a taking; this is not an automatic right; there are limitations. With this in mind, the facts in Wear are factually distinguishable from those in the case at bar.
¶ 8. In Wear, 175 So.2d at 509, the real property and sandstone were under no prior laws, rules, or regulations which restricted the mining of the sandstone before the condemnation proceedings. The Highway Commission was depriving Wear of his right to mine because they wished to take only the real property and reserve the minerals in Wear. Id. at 509. Additionally, the owner had previously mined the area to obtain and sell the sandstone contained within the property. Furthermore, the court noted that the mining of the rest of the sandstone was being saved for the owner’s retirement. Id. at 509. In the case at bar, just the opposite is true.
¶ 9. There were laws, rules, and regulations that prevented Scribner from mining its gravel deposits prior to the MDOT condemning the property. Additionally, Scribner had never made an attempt to previously obtain the right to mine the gravel deposits and provided no *228 evidence that it would do so in the immediate or near future. Scribner extracts and emphasizes the following language from the Wearopinion: “The instrument by which the Highway Department seeks the land reserves to the landowner all minerals, but prohibits mining activities upon its right-of-way, leaving the inescapable inference that the condemnation will also take the sandstone as it cannot be mined.” Id, As discussed above, the major distinction in allowing compensation to Wear as opposed to Scribner in the case at bar is that it was not the condemnation actions of the MDOT that originally deprived Scribner of the right to mine. Instead, in the case at bar, it was the laws, rules, and regulations instituted prior to the condemnation regarding restrictions on mining that deprived Scribner of the right to access the gravel deposits.
¶ 10. The statutory and regulatory restrictions previously in place relative to the surface mining of the old one hundred foot section under the taking area can be compared to the court’s former approach to the effect of city zoning ordinances on the value of property. In Mississippi State Highway Comm’n v. Wagley, 231 So.2d 507, 508-09 (Miss.1970), the Mississippi Supreme Court dealt with the issue of whether a reasonable probability that property taken which was zoned residential, but might be rezoned commercial in the imminent future, would allow that property to be valued as if rezoning had already been accomplished at the time of the taking. The court stated as follows:
[If] there is a possibility or probability that the zoning restriction may in the near future be repealed or amended so as to permit the use in question, such likelihood may be considered if the prospect of such repeal or amendment is sufficiently likely as to have an appreciable influence upon present market value. It follows from the foregoing that such possible change in the zoning regulations must not be remote or speculative. An important caveat to remember in applying the rule is that the property must not be evaluated as though the rezoning were already an accomplished fact. It must be evaluated under the restrictions of the existing zoning and consideration given to the impact upon market value of the likelihood of a change in zoning.
Id. at 509; see also Mississippi Transp. Comm’n v. National Bank of Commerce, 708 So.2d 1 (¶ 8) (Miss.1997). In other words, there must be evidence proving the likelihood that the restriction that prevents the purported best use can be removed; however, testimony relative to the value with the use restriction removed cannot be introduced at trial. Instead, for evidence to be admissible it must refer to the fair market value at the time of the condemnation when the restriction was in effect. Therefore, the testimony must reflect what a willing buyer might pay for the property with the current restriction in effect, and considering the possibility or probability that the willing buyer could attempt to get the restriction removed. Mere speculation as to a possible use of property is not to be considered. Wagley, 231 So.2d at 509. Similarly, to the court’s unwillingness to increase the value of the property based on the speculation of whether the area would be rezoned commercial, the same logic is applicable to the case at bar.
¶ 11. Like the residential zoning that was in place at the time of the taking, so were the rules and regulations that limited Scribner’s ability to mine the subject property at the time MDOT condemned the property. The gravel deposits cannot be valued based on speculation, as if mining were already granted. In the case at bar, it is only mere speculation on the behalf of Scribner and the witnesses that testified on Scribner’s - behalf that MDEQ might have granted Scribner the right to mine the old one hundred foot section but for the taking by MDOT. Witnesses’s testimony contained within the record fails to support the admissibility of the evidence of the value of the gravel deposits to the jury.
*229 ¶ 12. Ken McCarley, the director of the mining and reclamation division of MDEQ, was called to testify by the MDOT and asserted that other than the new one hundred foot section abutting the take area, he was not aware of Scribner making a request of MDEQ to have the designation of unsuitable for mining removed from the old one hundred foot section. At a subsequent hearing, Scribner proffered the testimony of several witnesses to try and support its claim for the value of the gravel deposits; however, their testimony was insufficient to allow admissibility under the guidelines enumerated in Wagley.
¶ 13. First, Scribner elicited the testimony of Aero English, vice president and general manager of Scribner. English testified that he believed since MDEQ had lifted the restriction on the new one hundred foot exclusion that there was also a probability that they would have lifted the restriction on the old one hundred foot section under the take area; however, when English was questioned by the judge, he admitted that he could not say more than a probability because he did not know. Next, Scribner presented the testimony of Sam Jaynes, county engineer for Monroe County, who measured the gravel in the take area. Jaynes testified that through testing he found approximately 531,000 cubic yards of gravel in the old one hundred foot section under the take area. Jaynes further testified that there was a demand for gravel in 1992 at the time of the take. Finally, Scribner presented the testimony of appraiser, Lynn Scogin. Sco-gin enumerated that in his opinion the MDEQ would have lifted the mining restriction in the take area since they had done so with the adjoining tract. Scogin stated that he had provided information in determining just compensation for the gravel value and was assisted in reaching a value by considering Jaynes’s information. Scogin multiplied 531,000 times forty-five cents a cubic yard to arrive at an amount for just compensation. On cross-examination, Scogin asserted that it was his understanding that the regulation restricting the mining on the old one hundred foot section had been rescinded, and that was the basis for his estimate of value in the third [amended] supplemental statement. Sco-gin, further conceded that if his understanding was incorrect, then the basis of his estimate would be incorrect. On redirect, Scogin asserted he valued the gravel based on the probability of MDEQ lifting the mining restriction. Scogin was the final witness whose testimony was proffered on behalf of Scribner. None of the testimony from the aforementioned witnesses when considered separately or together is sufficient to allow the value of the gravel deposits to go the jury.
¶ 14. The aforementioned testimony failed to show the likelihood that the restriction would or could be removed. Additionally, it did not show a likelihood that the restriction that prevented the use of the gravel would be removed, but instead gave a value on the basis of current value as if the restriction had been removed. Furthermore, none of the witnesses who testified stated that a willing buyer would have paid a higher price based on the probability of the restriction being lifted. Scribner has also failed to meet the three-prong test enumerated in Mississippi Transportation Comm’n v. Fires, 693 So.2d 917, 922 (Miss.1997). In Fires, 693 So.2d at 922, the Mississippi Supreme Court addressed the appraisal of condemned property and discussed the guidelines used to assist in determining the highest and best use relative to the value of the property. The court stated that when the land is appraised one should consider any use for which it is reasonably adapted. Id. This means the individual conducting the appraisal would be required to consider the best or most valuable use to which the property could reasonably be expected to be adapted, regardless of its current use. Id. If the court is going to admit testimony relative to the value for reasons besides what the land is currently being utilized, or which use has been limited by ordinance at the *230 time of the taking, the owner is required to show:
(1) the property is adaptable to the other use; (2) that it is reasonably probable that the property will be put to the other use within the immediate future, or within a reasonable time; and (3) that the market value of the land has been enhanced by the other use for which it is adaptable.
Id. The MDOT argues that under this three-prong test based on the speculative testimony and lack of evidence, Scribner failed to meet its burden and produce admissible evidence which met the three aforementioned elements; therefore, Scribner was not entitled to compensation for the gravel deposits in the old one hundred foot right-of-way under the taking area.
¶ 15. More specifically, MDOT asserted that the evidence was lacking due to the speculation on the part of Scribner regarding the probability of whether or not MDEQ would have removed the mining restriction on the old one hundred foot section based on the fact MDEQ had removed the restriction on the new one hundred foot section. Plus, the alleged lack of evidence to show the reasonable probability that the property will be put to the purported use within the immediate future or a reasonable time. After reviewing the record, this Court agrees with MDOT’s assertions.
¶ 16. As previously discussed, while testimony in the record shows that the old one hundred foot exclusion may contain gravel deposits which could be adapted for mining, they cannot be used. Scribner has never made an attempt to appeal the mining restriction on the gravel deposits in the old one hundred foot right-of-way. Additionally, the witnesses called to testify on Scribner’s behalf were only able to provide speculative testimony on whether MDEQ would have removed the restriction which would have allowed mining, as a basis for allowing Scribner the opportunity to receive value for the gravel deposits. Scribner’s inaction regarding an appeal and removal of the mining restriction and lack of testimony went toward substantiating the fact that there was no probability before or after the taking that the gravel was going to be used in the immediate future. The briefs filed by the parties also address the trial judge’s ruling on MDOT’s motion in limine and the resulting exclusion of the evidence relative to the value of the gravel deposits.
¶ 17. This Court notes that whether evidence is admitted or excluded at the trial level is within the sound discretion of the trial judge, and we apply an abuse of discretion standard of review in determining if error was committed. Thompson Mach. Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss.1997). It is within a trial court’s broad discretion to determine if evidence is relevant. Terrain Enterprises, Inc. v. Mockbee, 654 So.2d 1122, 1131 (Miss.1995). It has previously been stated that a motion in limine should only be granted if the trial court determines that the evidence would not be admissible under the rules.of evidence, and if presented would prejudice a jury. Whittley v. City of Meridian, 530 So.2d 1341, 1344 (Miss.1988). This Court cannot say that the lower court abused its discretion in granting MDOT’s motion in limine regarding the exclusion of evidence relative to the gravel deposits under the old one hundred foot section under the condemned area.
¶ 18. This Court has read the judgment entered by the trial court, wherein, the court explained that the evidence of gravel would be excluded for the following reasons:
[Scribner] lost the right to mine the gravel, if any, on April 15, 1978 by the action of the Mississippi Legislature in enacting the ‘Mississippi Surface Mining and Reclamation Law,’ the DEFENDANT [Scribner] had done nothing since that date to attempt to recover the right to mine in the take area prior to *231 the PLAINTIFF [MDOT] acquiring the land under the take area, and the take area is within the old one hundred foot exclusion zone that was established on April 15,1978.
This judgment reveals that the trial court determined that since the testimony regarding the gravel deposits were based on speculation it was not relevant in determining the value of the property and would be highly prejudicial to the jury. The conclusion is further supported by the aforementioned application of the law to the case at bar. Since this Court has determined that the gravel deposits are not to be considered in the case at bar, and affirms the decision of the lower court, it is unnecessary to address those arguments based on how a gravel deposit should be properly factored under the before and after rule. Therefore, we find these issues are without merit.
II. WHETHER IT WAS ERROR FOR THE TRIAL COURT TO REFUSE TO ALLOW SCRIBNER TO IMPLEAD AND FILE A CROSS-CLAIM AGAINST THE MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL QUALITY.
¶ 19. Scribner argues that since MDOT had previously been granted the right to join MDEQ as a party, that Scribner should have been allowed to file a cross-claim against MDEQ because compensation for the gravel deposits in the old one hundred foot section derive out of a common issue. This Court having reached the aforementioned conclusions in its opinion in issue one, finds that there is no merit in issue two, and will not further address this issue.
CONCLUSION
¶ 20. This Court affirms the findings of the lower court.
¶ 21. THE JUDGMENT OF THE SPECIAL COURT OF EMINENT DOMAIN OF MONROE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.