# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00158-SCT

*JOHN M. BARHAM, JR., MARSHA B. PRICE,*
*GREGORY P. BRADY, WILLIAM J. ROSS, JAMES*
*E. GUNN a/k/a ED GUNN AND DOUGLAS J.*
*GUNN*

*v.*

*MISSISSIPPI POWER COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/09/2017 |
| TRIAL JUDGE: | HON. EDWARD C. FENWICK |
| TRIAL COURT ATTORNEYS: | WILLIAM F. BLAIR |
| | ERIC LEE PATTERSON |
| | BEN HARRY STONE |
| | JONATHAN PAUL DYAL |
| | KARL CRAWFORD HIGHTOWER |
| | J. RICHARD BARRY |
| | HENRY PALMER |
| COURT FROM WHICH APPEALED: | KEMPER COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | ERIC LEE PATTERSON |
| | WILLIAM F. BLAIR |
| ATTORNEYS FOR APPELLEE: | BEN H. STONE |
| | JONATHAN P. DYAL |
| | K.C. HIGHTOWER |
| | BRYAN C. SAWYERS |
| | J. RICHARD BARRY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 03/28/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.    Our role, as a court of errors and appeals, is to determine whether any reversible error occurred in the court whence came the appeal. Today, two orders from separate courts are at issue. The orders were authored by two learned trial judges—one chancery, one circuit. Although our review is *de novo*, the applicable law is neither new nor novel. Because neither trial court failed to follow controlling law, we affirm.

**FACTS AND PROCEEDINGS BELOW**

¶2.    Barham, *et al.* ("the families"), filed suit in the Circuit Court of Kemper County, seeking, *inter alia*, a declaratory judgment that they owned lignite under a Mississippi Power Company ("MPC") plant built on land MPC had purchased, a fact not disputed by any party. One month later, MPC filed suit to confirm and quiet title to its property and further asserted that lignite could only be removed economically by surface mining, a fact not disputed by any party. MPC asked to enjoin all defendants[1] from asserting any right, title, or interest to the lignite. Alternatively, MPC asked for a declaratory judgment that lignite removal would deplete and destroy the surface of its land, rendering it unusable, a fact not disputed by any party.[2]

---

[1] Mississippi Code Section 11-17-35 (Rev. 2004) requires a plaintiff to deraign his title when attempting to confirm title or remove a cloud on title. The Mississippi Supreme Court has explained that a plaintiff's deraignment must show "title in himself from the government down, or he must show title by adverse possession . . . or he must show title from the defendant, or that both derive their claim from a common source, and that his is the better title from that source." **Long v. Stanley**, 79 Miss. 298, 300-01, 30 So. 823 (1901).

[2] MPC's chancery suit deraigned title to all persons with potential claims of ownership, which included unknown parties in interest and several defendants not included as plaintiffs in the circuit-court action. The families made no attempt to deraign title in the circuit court.

2

¶3.    MPC also moved to transfer the circuit-court suit to chancery court—the constitutional and traditional forum for such disputes[3]—because the families and MPC both sought to be declared owners of the lignite. The circuit court found the suit to be one "to confirm and quiet title to mineral estate owners and the surface estate owners, which is a determination of real property interests." The circuit court found the families' other counts, i.e., breach of duty of due regard, breach of duty of good faith and fair dealing, inverse condemnation,[4] negligence, and breach of fiduciary duty, were "ancillary to and contingent upon first determining the title to the lignite . . . ."

¶4.    The circuit court found that

> In this case, there is no doubt that the ultimate issue will be the determination of the rights of the mineral holders, which affects the real property upon which Mississippi Power is constructing its plant. A suit to confirm and quiet title has been filed, albeit after the filing date of this action, which has brought in all parties with potential claims to the lignite at issue. All of those parties have been served with process and are properly with the jurisdiction of the Kemper County Chancery Court. This Court is of the opinion that regardless of the timing of filing the complaint in this Court and the action in the chancery court, the issues involved are issues that would under ordinary circumstances be taken up by a chancery court.

The circuit court granted MPC's motion to transfer to the chancery court, finding that

> The Court is of the opinion that at the core of this litigation is a determination of ownership of the lignite in the subject property, which will require an interpretation of the terms contained within the deeds conveying the property wherein the reservations of parts of the mineral estate were made. As such, the Court finds this matter involves fundamental questions involving title to

---

[3] *See* Miss. Const. art. 6, § 160.

[4] The families adduced no evidence that MPC trespassed or took the property for public use. Rather they confessed that MPC purchased the property. Thus, a putative claim for taking by inverse condemnation fails.

interests in real property which are more appropriately heard in a court of equity; and therefore, this cause should be transferred to the Chancery Court of Kemper County.

¶5. After the case was transferred to chancery court, the parties acceded to the jurisdictional authority of the chancery court to resolve their disputes and *agreed* to consolidate the cases. The chancellor realigned the parties.

> The Barham-Gunn Suit and the MPC Suit involve common questions of law or fact, as both suits involve the question as to ownership of the lignite at issue. In the interest of judicial economy, and to save time and effort of the Court and parties, the Barham-Gunn Suit and the MPC Suit should be and are hereby consolidated. . . . In the consolidated action, the Barham-Gunn Families shall proceed at trial, if necessary, as the Plaintiffs and shall have the right to first present their case-in-chief.

¶6. Subsequently, MPC and the families filed motions for summary judgment in the chancery court, each claiming that no material facts were in dispute and that they were entitled to their requested relief. The parties agreed that MPC owned fee-simple title to the surface, that MPC began construction of the plant without authorization from or payment to the families, that the families were prevented from surface mining by MPC, and that lignite could only be removed economically by surface mining.

¶7. MPC argued that it was entitled to judgment as a matter of law on three separate bases. In reverse order, the Surface Coal Mining and Reclamation of Land Act ("Surface Mining Act")[5] deprived the families of the right to mine the lignite deposits. And then, because the families remained silent while MPC made substantial improvements on the

---

[5] Miss. Code Ann. §§ 53-9-1 to -123 (Rev. 2016).

property, the families were equitably estopped from claiming ownership of the lignite. Alternatively, as the surface owner, MPC owned the lignite as a matter of law.

¶8. The families offered that they owned the lignite in, on, and under the subject property, that MPC wrongfully covered up their minerals without just compensation, and that the Surface Mining Act did not apply because the families were not applicants for a permit. However, the families failed to offer any proof and no evidence is in the record that they were prohibited from offering any proof about the value a willing buyer would pay with the restriction in place.

¶9. The chancellor denied summary judgment as to MPC's ownership and equitable-estoppel claims, finding each issue fact driven. The chancellor granted summary judgment as to MPC's claim that the Surface Mining Act deprived the families of the right to mine the lignite deposits.

## ANALYSIS

¶10. This Court reviews motions to transfer *de novo*. *Issaquena Warren Ctys. Land Co., LLC v. Warren Cty.*, 996 So. 2d 747, 749 (Miss. 2008). The circuit court did not err in granting MPC's motion to transfer this suit to the chancery court, because it involved a title dispute. Under our Constitution, statutory law, and precedent, jurisdiction of suits involving title questions lies with the chancery court. *See* Miss. Const. art. 6, § 160[6]; Miss. Code Ann.

---

[6] Article 6, section 160, of the Mississippi Constitution states,

> And in addition to the jurisdiction heretofore exercised by the chancery court in suits to try title and to cancel deeds and other clouds upon title to real estate, it shall have jurisdiction in such cases to decree possession, and to displace possession; to decree rents and compensation for improvements and

5

§§ 11-17-29 (Rev. 2004) (the chancery court has jurisdiction for actions to confirm, quiet, clear, or remove cloud on title); and *Graves v. Dudley Maples, L.P.*, 950 So. 2d 1017, 1022 (Miss. 2007) ("However, no justifiable basis exists for arguing that a chancery court does not have jurisdiction over matters involving property. Such authority is conferred by our constitution, history, and precedent.").

¶11.  In reviewing the chancellor's grant and denial of MPC's summary-judgment motion, we also apply a *de novo* standard of review. *Hosemann v. Harris*, 163 So. 3d 263, 267 (Miss. 2015). The chancellor rightfully denied summary judgment as to MPC's ownership and equitable-estoppel claims, finding each issue fact driven. Determination of ownership of the lignite would require review of the language of the grant or reservation, the surrounding circumstances, and the intention of the parties. *See Cole v. McDonald*, 236 Miss. 168, 109 So. 2d 628, 635 (1959). The chancellor determined that "[t]he factors of 'intention of parties' and 'context' [were] questions of fact that vary from case to case." Likewise, the chancellor found that cases involving equitable estoppel vary factually from case to case.

¶12.  The chancellor then turned his consideration to the Surface Mining Act. Under the Surface Mining Act, one of two things must occur before one can "open, develop, engage in, carry out or continue on lands within the state any new or existing surface coal mining operations without a permit issued by the permit board." Miss. Code Ann. § 53-9-21(1) (Rev.

---

taxes; and in all cases where said court heretofore exercised jurisdiction, auxiliary to courts of common law, it may exercise such jurisdiction to grant the relief sought, although the legal remedy may not have been exhausted or the legal title established by a suit at law.

Miss. Const. art. 6, § 160.

2016). One must have a conveyance that expressly grants or reserves the right to extract the lignite by surface mining methods. Miss. Code Ann. § 53-9-33(2)(e) (Rev. 2016). The parties and the chancellor agreed that the families had no conveyance that expressly granted or reserved the right to extract the lignite. In the absence of a preceding conveyance that expressly granted or reserved the right to extract the lignite, the written consent of the surface owners must be obtained. *Id.* The parties agreed and the chancellor found that the families had not obtained MPC's consent. It is crystal clear that no material fact was at issue regarding either requirement. The chancellor applied the Surface Mining Act as written. The families' claim for declaratory judgment that they owned the lignite was of no event, for they failed to produce proof of value to monetize the lignite, which they were barred from mining.

¶13.    The chancellor cited *Scribner v. Mississippi Transportation Commission*, 767 So. 2d 225 (Miss. App. Ct. 2000), another mining case, to support its finding that the Surface Mining Act deprived the families of their right to develop or carry out surface mining of the lignite. The *Scribner* Court discussed the Mississippi Surface Mining and Reclamation Act.[7]

> In 1978, legislation was passed to control the surface mining and reclamation of land in Mississippi. The legislature invested MDEQ, among other commissions, with an advisory role in the administration of these laws, rules, and regulations. In the interest of reduction of significant damage to the subject property and public safety, a portion of these laws and regulations forbids surface mining within one hundred feet of the outside right-of-way line of a public road. These laws and regulations in turn excluded Scribner's right to mine the gravel deposits in the old one hundred foot section right-of-way because the land abutted Highway 45.

---

[7] Miss. Code Ann. §§ 53-7-1 to -77 (Rev. 2016).

*Id.* at 226. MDOT initiated a proceeding to acquire a section of Scribner's property. *Id.*

MDOT and Scribner could not agree on the compensation because Scribner "asserted that

there were valuable gravel deposits in the old one hundred foot exclusion located under the

taking area, and for just and fair compensation to be received for the property, the value of

the gravel deposits under this section would have to be considered." *Id.*

> Ultimately, the court rejected the statement of values submitted by Scribner and granted MDOT's *motion in limine* to exclude evidence of gravel in the old one hundred foot section under the take area. In turn, the court entered a judgment which awarded Scribner compensation for the condemnation in the total sum of $24,300. The court explained that the evidence of gravel would be excluded for the following reasons:

>> [Scribner] lost the right to mine the gravel, if any, on April 15, 1978 by the action of the Mississippi Legislature in enacting the 'Mississippi Surface Mining and Reclamation Law,' the DEFENDANT [Scribner] had done nothing since that date to attempt to recover the right to mine in the take area prior to the PLAINTIFF [MDOT] acquiring the land under the take area, and the take area is within the old one hundred foot exclusion zone that was established on April 15, 1978.

*Id.* at 226-27 (alterations in original). The *Scribner* Court agreed, finding that

> it was not the condemnation actions of the MDOT that originally deprived Scribner of the right to mine. Instead, in the case at bar, it was the laws, rules, and regulations instituted prior to the condemnation regarding restrictions on mining that deprived Scribner of the right to access the gravel deposits.

*Id.* at 228.

¶14.    In properly granting MPC's motion for summary judgment, the chancellor found that

> The impact of *Scribner* is that regardless of who prevails on the issue of who owns the lignite in this case, it is the Mississippi Surface [Coal] Mining and Reclamation Law (in effect since 1979) that prohibits the Families (assuming they are determined to be the owner) from having any legal right to surface mine the product [lignite] without the express written consent of MPC as the

surface owner. For this reason the court sustains MPC's motion for summary judgment.

¶15. The parties have failed to demonstrate any error by the circuit court in transferring the matter to chancery court or by the chancellor in applying the Surface Mining Act. The families lost the right to surface mine lignite, if any existed, on July 1, 1979, by the Mississippi Legislature's enactment of the Mississippi Surface Coal Mining and Reclamation Law. The families failed to protect the right to surface mine lignite through the conveyances or through express consent of MPC as the surface owner.

¶16. The Legislature made it clear when it enacted the Surface Mining Act that it was protecting the rights of surface landowners from surface mining. *See* Miss. Code Ann. § 53-9-5 (Rev. 2016).

> The Legislature finds and declares . . . [that] [m]any surface mining operations result in disturbances of surface areas that burden and adversely affect commerce and the public welfare by destroying or diminishing the utility of land for commercial, industrial, residential, recreational, agricultural and forestry purposes, by causing erosion and landslides, by contributing to floods, by polluting water, by destroying fish and wildlife habitats, by impairing natural beauty, by damaging the property of citizens, by creating hazards dangerous to life and property, by degrading the quality of life in local communities, and by counteracting governmental programs and efforts to conserve soil, water and other natural resources.

Miss. Code Ann. § 53-9-3(d) (Rev. 2016). Whether it be an entrepreneur developing a shopping mall, a religious organization erecting a church, a major manufacturer building a plant encompassing multiple acres, or a young couple constructing their dream home, every landowner is protected from the depletion and destruction of the surface of their land and the

9

buildings they construct on their land from the adverse effects of surface coal-mining operations. *See* Miss. Code Ann. § 53-9-3(j) (Rev. 2016).

## CONCLUSION

¶17.　Today's case presents two issues. One, whether the circuit court properly transferred a mineral deed dispute to chancery court. Second, whether the chancellor properly granted summary judgment in favor of MPC based on the Surface Mining Act. Ownership is of no event in today's case, because the lignite cannot be legally surface mined—no matter who owns it and no matter its value. The issue of ownership is moot if the contestant cannot mine what he claims to own. We find that neither learned trial judge erred and that judgment in favor of MPC was appropriate as a matter of law.

¶18.　**AFFIRMED.**

**MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. KITCHENS, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J.; COLEMAN AND CHAMBERLIN, JJ., JOIN IN PART. CHAMBERLIN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J.; KITCHENS AND KING, P.JJ., JOIN IN PART.**

**KITCHENS, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶19.　Respectfully, I concur in part and dissent in part. The Barham-Gunn families' circuit court action included a request for a declaratory judgment to answer the question of who owns the lignite at issue. Mississippi Power Company's quiet title action in chancery court also sought a determination of ownership of the lignite. The majority and dissenting opinions agree that genuine issues of material fact exist about who owns the lignite. Therefore, I would hold that this case should be reversed and remanded to the Chancery Court of Kemper

10

County for a determination of the lignite's ownership. I also would reverse the grant of summary judgment on the inverse condemnation claim and would remand that claim to chancery court.

¶20.    I agree with the majority opinion that the circuit court correctly transferred the circuit court lawsuit to chancery court. I agree with the majority's conclusion that, even if the Barham-Gunn families are deemed the owners of the lignite, they have no present right to mine it under the Mississippi Surface Coal Mining and Reclamation of Land Act. But the present inaccessibility of the lignite does not render it valueless. I agree with Justice Chamberlin that summary judgment was inappropriate on the inverse condemnation claim, although the families have not produced evidence that, if they own the lignite, it has any value. Once discovery proceeds on the issue of value, the families will have the opportunity to produce evidence beyond mere speculation that the lignite does have some value, although it cannot be mined by them at present. It can, of course, be mined and marketed by the surface owner.

¶21.    The majority finds the ownership issue moot because the families cannot mine the lignite. It declares that, without "proof of value to monetize the lignite, which they were barred from mining," the families were not entitled to an ownership determination. But a thing does not have to be valuable in the marketplace in order for someone to own it. Regardless of whether the families have a present right to mine the lignite, they are entitled to a determination of ownership. All litigants in this state have the "right to petition a court to confirm and quiet title to . . . disputed property." *Mize v. Westbrook Const. Co. of Oxford,*

11

*LLC*, 146 So. 3d 344, 350 (Miss. 2014). The Barham-Gunn families have a right, guaranteed by the Mississippi Constitution, to the legal resolution of their honest dispute about ownership of the lignite. *Id.*

¶22.   The families may wish to secure an ownership determination because, although they cannot mine the lignite today, they or their successors in interest may acquire the right to do so at some future time. The need for a determination of ownership in this case is more easily grasped by imagining the substance at issue to be gold, not lignite. If, in bygone times, the entrance to a gold mine had collapsed, rendering the gold inaccessible, any purported owners of the gold would be entitled to bring a quiet title action to resolve the question of its ownership. The gold, although rendered temporarily valueless by the mine's collapse, foreseeably could become valuable in the future as the result of technological advances in equipment necessary to gain access to it. Although gold provides a simplistic example, history is replete with instances of once-valueless elements or minerals that later became valuable. For example, the mining of uranium flourished after the discovery that it could be converted to plutonium by means of a nuclear reactor. *Uranium Mining*, Atomic Heritage Foundation (July 30, 2018), https://www.atomicheritage.org/history/uranium-mining. Prior to that discovery, uranium had little if any value.

¶23.   Regardless, under our constitution, a citizen is entitled to a judicial resolution of an ownership dispute even if the property right at issue has no value at all. *Mize*, 146 So. 3d at 350. Whatever the families' reason for desiring a determination of ownership, they are

12

entitled to one. I would remand the issues of ownership and inverse condemnation for determination by the chancery court.

**KING, P.J., JOINS THIS OPINION. COLEMAN AND CHAMBERLIN, JJ., JOIN THIS OPINION IN PART.**

**CHAMBERLIN, JUSTICE, DISSENTING:**

¶24. The majority declares,

> Whether it be an entrepreneur developing a shopping mall, a religious organization erecting a church, a major manufacturer building a plant encompassing multiple acres, or a young couple constructing their dream home, every landowner is protected from the depletion and destruction of the surface of their land and buildings they construct on their land from the adverse affect of surface coal-mining operations.

Maj. Op. ¶16. I do not disagree with this lofty declaration. I point out, however, that not one party is arguing that depletion and destruction of land should occur. The arguments address ownership of the lignite, the right to compensation and the fundamental right to a jury trial—three points that the majority fails to fully analyze. For these reasons, I respectfully dissent.

### A. Lignite Ownership

¶25. The circuit court ordered that the case be transferred to chancery court, holding that "the underlying issue in this matter is the determination of title to the lignite located in or on the subject property." The circuit court further stated that the determination of the ownership was a "fundamental issue" and that all the remaining issues were "pendent." Once the case was transferred, however, the chancellor dismissed the case without a finding of fact as to

13

who owns the lignite. Today, the majority follows suit, glossing over the fundamental importance of the ownership determination.

¶26. Both sides requested that the chancery court determine ownership. Both sides agreed that sufficient evidence was before the chancery court for a determination of ownership. Finally, the chancery court determined that a genuine issue of material fact existed as to ownership. Simply stated, both sides are entitled to a determination of ownership. This issue may become vital in the future, and judicial expediency and fairness dictate that the parties should not have to wait until the future for such a determination.

### B. *Application of* Scribner

¶27. The majority states that the families have failed to prove inverse condemnation. I could not agree more. However, what the majority overlooks is that the issue of inverse condemnation (except as it relates to a failure to prove damages) is simply not before the Court. It may very well be true that the families cannot prove inverse condemnation, but as I explain below, the putative claim for inverse condemnation does not fail simply because, as the majority states, the families "confessed that MPC purchased the property." Maj. Op. ¶ 3 n.4. The issue at hand addresses mineral rights, not the sale of the surface of the property. Therefore, inverse condemnation is an issue to be dealt with after it is properly presented to the trial court.

¶28. In this case, the chancellor looked to *Scribner v. Mississippi Transportation Commission*, 767 So. 2d 225 (Miss. Ct. App. 2000), and simply found that the families had no right to mine the land. Therefore, under the chancellor's analysis, the case ends. The

14

majority follows suit and concludes that the chancellor properly relied on and cited *Scribner*. Although I do not disagree with the holding in *Scribner*, I disagree with the majority's application of the case. It overlooks *Scribner*'s limitations.

¶29. The Court of Appeals reviewed *Scribner* under an abuse-of-discretion standard to determine whether the trial court erred in granting the motion in limine. Under the standard of review, *Scribner* determined that the grant of the motion in limine was proper because the testimony was too speculative and prejudicial. *Scribner*, 767 So. 2d at 229. Specifically, the *Scribner* Court stated, "[T]he testimony must reflect what a willing buyer might pay for the property with the current restriction in effect, and considering the possibility or probability that the willing buyer could attempt to get the restriction removed." *Id.* For support, the *Scribner* Court looked to our previous precedent regarding the valuation of property for eminent domain purposes. *Scribner*, 767 So. 2d at 228-29 (citing *Miss. State Highway Comm'n v. Wagley*, 231 So. 2d 507 (Miss. 1970); *Miss. Transp. Comm'n v. Fires*, 693 So. 2d 917 (Miss. 1997)). Importantly, *Scribner* did not address whether other damages could be proved with the restriction in place. *Scribner* just involved an evidentiary ruling as to what damage evidence would be allowed under its particular set of facts.

¶30. Further, here, the families may be able to present proof of additional damages as to willing buyers (i.e., speculators). Regardless, if they do, in fact, prove inverse condemnation, the families are entitled to nominal damages for trespass to mineral rights. *See Whitten v. Cox*, 799 So. 2d 1, 18 (Miss. 2000) ("It is a principle of universal application that every

15

trespass gives the landowner a right to at least nominal damages." (quoting ***Chevron Oil Co.***

***v. Snellgrove***, 253 Miss. 356, 175 So. 2d 471, 474 (1965))).

¶31.    Considering our precedent and our differing standard of review, the instant issue has two considerations that the Court should instruct the trial court to address if a taking is otherwise proved: (1) what a willing buyer would pay for the property with the restriction in place as noted by ***Wagley*** and ***Scribner***; and (2) under ***Fires***, ***Wagley*** and ***Scribner***, whether sufficient evidence exists regarding the best or most valuable use of the property or whether the evidence is too speculative to go to the jury.  In other words, to use ***Scribner*** alone as the nail in the coffin of damages ignores our precedent.

### C.    *Right to Jury Trial*

¶32.    The families filed suit in circuit court before MPC filed suit in chancery court. The families requested a declaratory judgment holding that they had reserved the lignite, and they also brought claims for breach of duty of due regard, breach of duty of good faith and fair dealing, inverse condemnation, negligence and breach of fiduciary duty. In other words, they filed claims that entitled them to a jury trial in a court that is authorized by law to hear all of their claims and that would have provided them a jury trial.  This was done before the chancery-court proceeding even existed.  After the transfer to chancery court, the families lost their ability to make their arguments before a jury.  On appeal, the families maintain that their case should be transferred to circuit court.

¶33.    The Court has faced a similar issue in which each party filed its claims in a different court. ***Georgia-Pacific Corp. v. Mooney***, 909 So. 2d 1081 (Miss. 2005).  On appeal, after a

review of the facts surrounding each of the separately filed cases, the Court split the case, directing that the claims originally filed in circuit court were to be transferred back to circuit court and that the claims originally filed in chancery court were to remain in chancery court. *Id.* at 1087-88. Further, combined with *Mooney*'s guidance, I note the importance of a trial by jury. Miss. Const. art. 3, § 31 ("The right of trial by jury shall remain inviolate . . . ."). I do not believe that our jurisprudence provides that by simply filing a belated pleading in a court that does not provide for a jury trial, a litigant's constitutional right to a jury trial can be abrogated. Finally, our constitution provides that circuit courts are courts of general jurisdiction, while chancery courts are courts of limited jurisdiction. Miss. Const., art. 6, §§ 156, 159. Thus, following our learned precedent and the procedural history of the case, I would hold that the families claims should be remanded to circuit court.

¶34. For the forgoing reasons, I respectfully dissent.

**COLEMAN, J., JOINS THIS OPINION. KITCHENS AND KING, P.JJ., JOIN THIS OPINION IN PART.**