RANDOLPH, CHIEF JUSTICE, FOR THE COURT:
 

 ¶1. Our role, as a court of errors and appeals, is to determine whether any reversible error occurred in the court whence came the appeal. Today, two orders from separate courts are at issue. The orders were authored by two learned trial judges-one chancery, one circuit. Although our review is
 
 de novo
 
 , the applicable law is neither new nor novel. Because neither trial court failed to follow controlling law, we affirm.
 

 FACTS AND PROCEEDINGS BELOW
 

 ¶2. Barham,
 
 et al.
 
 ("the families"), filed suit in the Circuit Court of Kemper County, seeking,
 
 inter alia
 
 , a declaratory judgment that they owned lignite under a Mississippi Power Company ("MPC") plant built on land MPC had purchased, a fact not disputed by any party. One month later, MPC filed suit to confirm and quiet title to its property and further asserted that lignite could only be removed economically by surface mining, a fact not disputed by any party. MPC asked to enjoin all defendants
 
 [1]
 
 from asserting any right, title, or interest to the lignite. Alternatively, MPC asked for a declaratory judgment that lignite removal would deplete and destroy the surface of its land, rendering it unusable, a fact not disputed by any party.
 
 [2]
 

 ¶3. MPC also moved to transfer the circuit-court suit to chancery court-the constitutional and traditional forum for such disputes
 
 [3]
 
 -because the families and MPC both sought to be declared owners of the lignite. The circuit court found the suit to be one "to confirm and quiet title to mineral estate owners and the surface estate owners, which is a determination of real property interests." The circuit court found the families' other counts, i.e., breach of duty of due regard, breach of duty of good faith and fair dealing, inverse condemnation,
 
 [4]
 
 negligence, and breach of fiduciary duty, were "ancillary to and contingent upon first determining the title to the lignite ...."
 

 ¶4. The circuit court found that
 

 In this case, there is no doubt that the ultimate issue will be the determination of the rights of the mineral holders, which affects the real property upon which Mississippi Power is constructing its plant. A suit to confirm and quiet title has been filed, albeit after the filing date of this action, which has brought in all parties with potential claims to the lignite at issue. All of those parties have been served with process and are properly with the jurisdiction of the Kemper County Chancery Court. This Court is of the opinion that regardless of the timing of filing the complaint in this Court and the action in the chancery court, the issues involved are issues that would under ordinary circumstances be taken up by a chancery court.
 

 The circuit court granted MPC's motion to transfer to the chancery court, finding that
 

 The Court is of the opinion that at the core of this litigation is a determination of ownership of the lignite in the subject property, which will require an interpretation of the terms contained within the deeds conveying the property wherein the reservations of parts of the mineral estate were made. As such, the Court finds this matter involves fundamental questions involving title to interests in real property which are more appropriately heard in a court of equity; and therefore, this cause should be transferred to the Chancery Court of Kemper County.
 

 ¶5. After the case was transferred to chancery court, the parties acceded to the jurisdictional authority of the chancery court to resolve their disputes and
 
 agreed
 
 to consolidate the cases. The chancellor realigned the parties.
 

 The Barham-Gunn Suit and the MPC Suit involve common questions of law or fact, as both suits involve the question as to ownership of the lignite at issue. In the interest of judicial economy, and to save time and effort of the Court and parties, the Barham-Gunn Suit and the MPC Suit should be and are hereby consolidated.... In the consolidated action, the Barham-Gunn Families shall proceed at trial, if necessary, as the Plaintiffs and shall have the right to first present their case-in-chief.
 

 ¶6. Subsequently, MPC and the families filed motions for summary judgment in the chancery court, each claiming that no material facts were in dispute and that they were entitled to their requested relief. The parties agreed that MPC owned fee-simple
 title to the surface, that MPC began construction of the plant without authorization from or payment to the families, that the families were prevented from surface mining by MPC, and that lignite could only be removed economically by surface mining.
 

 ¶7. MPC argued that it was entitled to judgment as a matter of law on three separate bases. In reverse order, the Surface Coal Mining and Reclamation of Land Act ("Surface Mining Act")
 
 [5]
 
 deprived the families of the right to mine the lignite deposits. And then, because the families remained silent while MPC made substantial improvements on the property, the families were equitably estopped from claiming ownership of the lignite. Alternatively, as the surface owner, MPC owned the lignite as a matter of law.
 

 ¶8. The families offered that they owned the lignite in, on, and under the subject property, that MPC wrongfully covered up their minerals without just compensation, and that the Surface Mining Act did not apply because the families were not applicants for a permit. However, the families failed to offer any proof and no evidence is in the record that they were prohibited from offering any proof about the value a willing buyer would pay with the restriction in place.
 

 ¶9. The chancellor denied summary judgment as to MPC's ownership and equitable-estoppel claims, finding each issue fact driven. The chancellor granted summary judgment as to MPC's claim that the Surface Mining Act deprived the families of the right to mine the lignite deposits.
 

 ANALYSIS
 

 ¶10. This Court reviews motions to transfer
 
 de novo.
 

 Issaquena Warren Ctys. Land Co., LLC v. Warren Cty.
 
 ,
 
 996 So.2d 747
 
 , 749 (Miss. 2008). The circuit court did not err in granting MPC's motion to transfer this suit to the chancery court, because it involved a title dispute. Under our Constitution, statutory law, and precedent, jurisdiction of suits involving title questions lies with the chancery court.
 
 See
 
 Miss. Const. art. 6, § 160
 
 [6]
 
 ;
 
 Miss. Code Ann. §§ 11-17-29
 
 (Rev. 2004) (the chancery court has jurisdiction for actions to confirm, quiet, clear, or remove cloud on title); and
 
 Graves v. Dudley Maples, L.P.
 
 ,
 
 950 So.2d 1017
 
 , 1022 (Miss. 2007) ("However, no justifiable basis exists for arguing that a chancery court does not have jurisdiction over matters involving property. Such authority is conferred by our constitution, history, and precedent.").
 

 ¶11. In reviewing the chancellor's grant and denial of MPC's summary-judgment motion, we also apply a
 
 de novo
 
 standard of review.
 
 Hosemann v. Harris
 
 ,
 
 163 So.3d 263
 
 , 267 (Miss. 2015). The chancellor rightfully denied summary judgment as to MPC's ownership and equitable-estoppel claims, finding each issue fact driven. Determination of ownership of the lignite would require review of the language of the grant or reservation, the surrounding circumstances, and the intention of the
 parties.
 
 See
 

 Cole v. McDonald
 
 ,
 
 236 Miss. 168
 
 ,
 
 109 So.2d 628
 
 , 635 (1959). The chancellor determined that "[t]he factors of 'intention of parties' and 'context' [were] questions of fact that vary from case to case." Likewise, the chancellor found that cases involving equitable estoppel vary factually from case to case.
 

 ¶12. The chancellor then turned his consideration to the Surface Mining Act. Under the Surface Mining Act, one of two things must occur before one can "open, develop, engage in, carry out or continue on lands within the state any new or existing surface coal mining operations without a permit issued by the permit board."
 
 Miss. Code Ann. § 53-9-21
 
 (1) (Rev. 2016). One must have a conveyance that expressly grants or reserves the right to extract the lignite by surface mining methods.
 
 Miss. Code Ann. § 53-9-33
 
 (2)(e) (Rev. 2016). The parties and the chancellor agreed that the families had no conveyance that expressly granted or reserved the right to extract the lignite. In the absence of a preceding conveyance that expressly granted or reserved the right to extract the lignite, the written consent of the surface owners must be obtained.
 

 Id.
 

 The parties agreed and the chancellor found that the families had not obtained MPC's consent. It is crystal clear that no material fact was at issue regarding either requirement. The chancellor applied the Surface Mining Act as written. The families' claim for declaratory judgment that they owned the lignite was of no event, for they failed to produce proof of value to monetize the lignite, which they were barred from mining.
 

 ¶13. The chancellor cited
 
 Scribner v. Mississippi Transportation Commission
 
 ,
 
 767 So.2d 225
 
 (Miss. App. Ct. 2000), another mining case, to support its finding that the Surface Mining Act deprived the families of their right to develop or carry out surface mining of the lignite. The
 
 Scribner
 
 Court discussed the Mississippi Surface Mining and Reclamation Act.
 
 [7]
 

 In 1978, legislation was passed to control the surface mining and reclamation of land in Mississippi. The legislature invested MDEQ, among other commissions, with an advisory role in the administration of these laws, rules, and regulations. In the interest of reduction of significant damage to the subject property and public safety, a portion of these laws and regulations forbids surface mining within one hundred feet of the outside right-of-way line of a public road. These laws and regulations in turn excluded Scribner's right to mine the gravel deposits in the old one hundred foot section right-of-way because the land abutted Highway 45.
 

 Id.
 

 at 226
 
 . MDOT initiated a proceeding to acquire a section of Scribner's property.
 

 Id.
 

 MDOT and Scribner could not agree on the compensation because Scribner "asserted that there were valuable gravel deposits in the old one hundred foot exclusion located under the taking area, and for just and fair compensation to be received for the property, the value of the gravel deposits under this section would have to be considered."
 

 Id.
 

 Ultimately, the court rejected the statement of values submitted by Scribner and granted MDOT's
 
 motion in limine
 
 to exclude evidence of gravel in the old one hundred foot section under the take area. In turn, the court entered a judgment which awarded Scribner compensation for the condemnation in the total sum of $24,300. The court explained that the evidence of gravel would be excluded for the following reasons:
 

 [Scribner] lost the right to mine the gravel, if any, on April 15, 1978 by the action of the Mississippi Legislature in enacting the 'Mississippi Surface Mining and Reclamation Law,' the DEFENDANT [Scribner] had done nothing since that date to attempt to recover the right to mine in the take area prior to the PLAINTIFF [MDOT] acquiring the land under the take area, and the take area is within the old one hundred foot exclusion zone that was established on April 15, 1978.
 

 Id.
 

 at 226-27
 
 (alterations in original). The
 
 Scribner
 
 Court agreed, finding that
 

 it was not the condemnation actions of the MDOT that originally deprived Scribner of the right to mine. Instead, in the case at bar, it was the laws, rules, and regulations instituted prior to the condemnation regarding restrictions on mining that deprived Scribner of the right to access the gravel deposits.
 

 Id.
 

 at 228
 
 .
 

 ¶14. In properly granting MPC's motion for summary judgment, the chancellor found that
 

 The impact of
 
 Scribner
 
 is that regardless of who prevails on the issue of who owns the lignite in this case, it is the Mississippi Surface [Coal] Mining and Reclamation Law (in effect since 1979) that prohibits the Families (assuming they are determined to be the owner) from having any legal right to surface mine the product [lignite] without the express written consent of MPC as the surface owner. For this reason the court sustains MPC's motion for summary judgment.
 

 ¶15. The parties have failed to demonstrate any error by the circuit court in transferring the matter to chancery court or by the chancellor in applying the Surface Mining Act. The families lost the right to surface mine lignite, if any existed, on July 1, 1979, by the Mississippi Legislature's enactment of the Mississippi Surface Coal Mining and Reclamation Law. The families failed to protect the right to surface mine lignite through the conveyances or through express consent of MPC as the surface owner.
 

 ¶16. The Legislature made it clear when it enacted the Surface Mining Act that it was protecting the rights of surface landowners from surface mining.
 
 See
 

 Miss. Code Ann. § 53-9-5
 
 (Rev. 2016).
 

 The Legislature finds and declares ... [that] [m]any surface mining operations result in disturbances of surface areas that burden and adversely affect commerce and the public welfare by destroying or diminishing the utility of land for commercial, industrial, residential, recreational, agricultural and forestry purposes, by causing erosion and landslides, by contributing to floods, by polluting water, by destroying fish and wildlife habitats, by impairing natural beauty, by damaging the property of citizens, by creating hazards dangerous to life and property, by degrading the quality of life in local communities, and by counteracting governmental programs and efforts to conserve soil, water and other natural resources.
 

 Miss. Code Ann. § 53-9-3
 
 (d) (Rev. 2016). Whether it be an entrepreneur developing a shopping mall, a religious organization erecting a church, a major manufacturer building a plant encompassing multiple acres, or a young couple constructing their dream home, every landowner is protected from the depletion and destruction of the surface of their land and the buildings they construct on their land from the adverse effects of surface coal-mining operations.
 
 See
 

 Miss. Code Ann. § 53-9-3
 
 (j) (Rev. 2016).
 

 CONCLUSION
 

 ¶17. Today's case presents two issues. One, whether the circuit court properly transferred a mineral deed dispute to chancery court. Second, whether the chancellor properly granted summary judgment in favor of MPC based on the Surface Mining Act. Ownership is of no event in today's case, because the lignite cannot be legally surface mined-no matter who owns it and no matter its value. The issue of ownership is moot if the contestant cannot mine what he claims to own. We find that neither learned trial judge erred and that judgment in favor of MPC was appropriate as a matter of law.
 

 ¶18.
 
 AFFIRMED.
 

 MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. KITCHENS, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J.; COLEMAN AND CHAMBERLIN, JJ., JOIN IN PART. CHAMBERLIN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J.; KITCHENS AND KING, P.JJ., JOIN IN PART.
 

 Mississippi Code Section 11-17-35 (Rev. 2004) requires a plaintiff to deraign his title when attempting to confirm title or remove a cloud on title. The Mississippi Supreme Court has explained that a plaintiff's deraignment must show "title in himself from the government down, or he must show title by adverse possession ... or he must show title from the defendant, or that both derive their claim from a common source, and that his is the better title from that source."
 
 Long v. Stanley
 
 ,
 
 79 Miss. 298
 
 , 300-01,
 
 30 So. 823
 
 (1901).
 

 MPC's chancery suit deraigned title to all persons with potential claims of ownership, which included unknown parties in interest and several defendants not included as plaintiffs in the circuit-court action. The families made no attempt to deraign title in the circuit court.
 

 See
 
 Miss. Const. art. 6, § 160.
 

 The families adduced no evidence that MPC trespassed or took the property for public use. Rather they confessed that MPC purchased the property. Thus, a putative claim for taking by inverse condemnation fails.
 

 Miss. Code Ann. §§ 53-9-1
 
 to -123 (Rev. 2016).
 

 Article 6, section 160, of the Mississippi Constitution states,
 

 And in addition to the jurisdiction heretofore exercised by the chancery court in suits to try title and to cancel deeds and other clouds upon title to real estate, it shall have jurisdiction in such cases to decree possession, and to displace possession; to decree rents and compensation for improvements and taxes; and in all cases where said court heretofore exercised jurisdiction, auxiliary to courts of common law, it may exercise such jurisdiction to grant the relief sought, although the legal remedy may not have been exhausted or the legal title established by a suit at law.
 

 Miss. Const. art. 6, § 160.
 

 Miss. Code Ann. §§ 53-7-1
 
 to -77 (Rev. 2016).