CHAMBERLIN, JUSTICE, DISSENTING:
 

 ¶24. The majority declares,
 

 Whether it be an entrepreneur developing a shopping mall, a religious organization erecting a church, a major manufacturer building a plant encompassing multiple acres, or a young couple constructing their dream home, every landowner is protected from the depletion and destruction of the surface of their land and buildings they construct on their land from the adverse affect of surface coal-mining operations.
 

 Maj. Op. ¶ 16. I do not disagree with this lofty declaration. I point out, however, that not one party is arguing that depletion and destruction of land should occur. The arguments address ownership of the lignite, the right to compensation and the fundamental right to a jury trial-three points that the majority fails to fully analyze. For these reasons, I respectfully dissent.
 

 A. Lignite Ownership
 

 ¶25. The circuit court ordered that the case be transferred to chancery court, holding that "the underlying issue in this matter is the determination of title to the lignite located in or on the subject property." The circuit court further stated that the determination of the ownership was a "fundamental issue" and that all the remaining issues were "pendent." Once the case was transferred, however, the chancellor dismissed the case without a finding of fact as to who owns the lignite. Today, the majority follows suit, glossing over the fundamental importance of the ownership determination.
 

 ¶26. Both sides requested that the chancery court determine ownership. Both sides agreed that sufficient evidence was
 before the chancery court for a determination of ownership. Finally, the chancery court determined that a genuine issue of material fact existed as to ownership. Simply stated, both sides are entitled to a determination of ownership. This issue may become vital in the future, and judicial expediency and fairness dictate that the parties should not have to wait until the future for such a determination.
 

 B. Application of
 

 Scribner
 

 ¶27. The majority states that the families have failed to prove inverse condemnation. I could not agree more. However, what the majority overlooks is that the issue of inverse condemnation (except as it relates to a failure to prove damages) is simply not before the Court. It may very well be true that the families cannot prove inverse condemnation, but as I explain below, the putative claim for inverse condemnation does not fail simply because, as the majority states, the families "confessed that MPC purchased the property." Maj. Op. ¶ 3 n.4. The issue at hand addresses mineral rights, not the sale of the surface of the property. Therefore, inverse condemnation is an issue to be dealt with after it is properly presented to the trial court.
 

 ¶28. In this case, the chancellor looked to
 
 Scribner v. Mississippi Transportation Commission
 
 ,
 
 767 So.2d 225
 
 (Miss. Ct. App. 2000), and simply found that the families had no right to mine the land. Therefore, under the chancellor's analysis, the case ends. The majority follows suit and concludes that the chancellor properly relied on and cited
 
 Scribner
 
 . Although I do not disagree with the holding in
 
 Scribner
 
 , I disagree with the majority's application of the case. It overlooks
 
 Scribner
 
 's limitations.
 

 ¶29. The Court of Appeals reviewed
 
 Scribner
 
 under an abuse-of-discretion standard to determine whether the trial court erred in granting the motion in limine. Under the standard of review,
 
 Scribner
 
 determined that the grant of the motion in limine was proper because the testimony was too speculative and prejudicial.
 
 Scribner
 
 ,
 
 767 So.2d at 229
 
 . Specifically, the
 
 Scribner
 
 Court stated, "[T]he testimony must reflect what a willing buyer might pay for the property with the current restriction in effect, and considering the possibility or probability that the willing buyer could attempt to get the restriction removed."
 

 Id.
 

 For support, the
 
 Scribner
 
 Court looked to our previous precedent regarding the valuation of property for eminent domain purposes.
 
 Scribner
 
 ,
 
 767 So.2d at
 
 228-29 (citing
 
 Miss. State Highway Comm'n v. Wagley
 
 ,
 
 231 So.2d 507
 
 (Miss. 1970) ;
 
 Miss. Transp. Comm'n v. Fires
 
 ,
 
 693 So.2d 917
 
 (Miss. 1997) ). Importantly,
 
 Scribner
 
 did not address whether other damages could be proved with the restriction in place.
 
 Scribner
 
 just involved an evidentiary ruling as to what damage evidence would be allowed under its particular set of facts.
 

 ¶30. Further, here, the families may be able to present proof of additional damages as to willing buyers (i.e., speculators). Regardless, if they do, in fact, prove inverse condemnation, the families are entitled to nominal damages for trespass to mineral rights.
 
 See
 

 Whitten v. Cox
 
 ,
 
 799 So.2d 1
 
 , 18 (Miss. 2000) ("It is a principle of universal application that every trespass gives the landowner a right to at least nominal damages." (quoting
 
 Chevron Oil Co. v. Snellgrove
 
 ,
 
 253 Miss. 356
 
 ,
 
 175 So.2d 471
 
 , 474 (1965) ) ).
 

 ¶31. Considering our precedent and our differing standard of review, the instant issue has two considerations that the Court should instruct the trial court to address if a taking is otherwise proved: (1) what a willing buyer would pay for the property with the restriction in place as
 noted by
 
 Wagley
 
 and
 
 Scribner
 
 ; and (2) under
 
 Fires
 
 ,
 
 Wagley
 
 and
 
 Scribner
 
 , whether sufficient evidence exists regarding the best or most valuable use of the property or whether the evidence is too speculative to go to the jury. In other words, to use
 
 Scribner
 
 alone as the nail in the coffin of damages ignores our precedent.
 

 C. Right to Jury Trial
 

 ¶32. The families filed suit in circuit court before MPC filed suit in chancery court. The families requested a declaratory judgment holding that they had reserved the lignite, and they also brought claims for breach of duty of due regard, breach of duty of good faith and fair dealing, inverse condemnation, negligence and breach of fiduciary duty. In other words, they filed claims that entitled them to a jury trial in a court that is authorized by law to hear all of their claims and that would have provided them a jury trial. This was done before the chancery-court proceeding even existed. After the transfer to chancery court, the families lost their ability to make their arguments before a jury. On appeal, the families maintain that their case should be transferred to circuit court.
 

 ¶33. The Court has faced a similar issue in which each party filed its claims in a different court.
 
 Georgia-Pacific Corp. v. Mooney
 
 ,
 
 909 So.2d 1081
 
 (Miss. 2005). On appeal, after a review of the facts surrounding each of the separately filed cases, the Court split the case, directing that the claims originally filed in circuit court were to be transferred back to circuit court and that the claims originally filed in chancery court were to remain in chancery court.
 

 Id.
 

 at 1087-88
 
 . Further, combined with
 
 Mooney
 
 's guidance, I note the importance of a trial by jury. Miss. Const. art. 3, § 31 ("The right of trial by jury shall remain inviolate ...."). I do not believe that our jurisprudence provides that by simply filing a belated pleading in a court that does not provide for a jury trial, a litigant's constitutional right to a jury trial can be abrogated. Finally, our constitution provides that circuit courts are courts of general jurisdiction, while chancery courts are courts of limited jurisdiction. Miss. Const., art. 6, §§ 156, 159. Thus, following our learned precedent and the procedural history of the case, I would hold that the families claims should be remanded to circuit court.
 

 ¶34. For the forgoing reasons, I respectfully dissent.
 

 COLEMAN, J., JOINS THIS OPINION. KITCHENS AND KING, P.JJ., JOIN THIS OPINION IN PART.